**VALLEY BAPTIST MEDICAL CENTER, Appellant,**

v.

**Margaret STRADLEY, Appellee.**

**No. 13–06–191–CV.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Nov. 30, 2006.

Scott T. Clark, Adams & Graham, Harlingen, for appellant.

Don Stecker, Putman & Putman, Inc., San Antonio, for appellee.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

**OPINION**

Opinion by Chief Justice VALDEZ.

Valley Baptist Medical Center ("VBMC"), appellant, brings an interlocutory appeal from the trial court's denial of its motion to dismiss the underlying cause of action. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9) (Vernon Supp.2006). Margaret Stradley, appellee, has filed a motion asking this Court to dismiss the appeal for lack of jurisdiction. By four issues, VBMC asks us to determine whether: (1) Stradley's allegation that VBMC was negligent in its safety practices alleges a departure from "accepted standards of safety" such that she is making a health care liability claim and is required to provide an expert report; (2) in light of the current definition of "health care liability claim" and the Texas Supreme Court's *Diversicare* opinion, claims based on the safety practices of health care providers must

involve conduct that is "directly related to health care" or "an inseparable part of the rendition of health care services" in order to be subject to the medical liability chapter of the Texas Civil Practice and Remedies Code; (3) dismissal for lack of an expert report is an affirmative defense; and (4) VBMC waived its right to seek dismissal for lack of an expert report. We affirm the trial court's denial of VBMC's motion to dismiss.

## I. BACKGROUND

### A. Factual Background

The underlying cause of action stems from a fall Stradley had on a treadmill at VBMC's Wellness Center, a fitness center located on the campus of Valley Baptist Medical Center. At the time of the incident, Stradley was a 78 year-old retiree who was having weight, hypertension, and mobility issues. Her primary care physician "prescribed" exercise and referred Stradley to the Wellness Center. During one of her visits to the center, Stradley attempted to use a treadmill. It is alleged that the treadmill unexpectedly accelerated and when Stradley pulled the emergency stop cord, the treadmill did not stop. Stradley was allegedly thrown to the floor by the treadmill and injured her arm and shoulder.

### B. Procedural Background

Stradley brought a premises liability claim and negligence causes of action against VBMC.[1] VBMC answered with a general denial of the allegations. It later filed a motion to dismiss. VBMC's motion to dismiss claimed Stradley's cause of action was really a health care liability claim, which is governed by the Texas Civil Practice and Remedies Code requirement that an expert medical report be filed within 120 days of when the claim was filed. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a)(Vernon Supp.2006). The trial court denied VBMC's motion to dismiss, stating in its order that "the underlying nature of this case is not a 'health care liability claim' [sic] as defined in Section 74.001 et. seq. Texas Civil Practice and Remedies Code and therefore, Defendant's Motion to Dismiss should be denied." VBMC brings this appeal under the interlocutory appeal statute. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9)(Vernon Supp.2006) (providing that a person may appeal from an interlocutory order of a district court, county court at law, or county court that denies all or part of the relief sought by a motion under Section 74.351(b)).[2]

## II. DISCUSSION

### A. Stradley's Motion to Dismiss the Appeal

■ The characterization of a claim as a health care liability claim is a threshold question in section 51.014 appeals. *See, e.g., Valley Baptist Med. Ctr. v. Azua,* No. 13–05–00488–CV, 2006 WL 2076756, at *2, 2006 Tex.App. LEXIS 6659, *5, 198 S.W.3d 810, 814 (Tex.App.-Corpus Christi July 27, 2004, no pet.) (not designated for publication) ("Although section 51.014(a)(9)

---

1. Stradley alleged that VBMC failed to (1) to adequately hire, train, and instruct its employees in the safe operation of exercise machines, (2) adequately inspect, repair, or maintain the machines, (3) supervise her use of the treadmill, and (4) warn her of the risks posed by the treadmill.

2. Section 74.351(b) of the Texas Civil Practice & Remedies Code reads, "If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall subject to Subsection (c), enter an order that...."

specifically authorizes an interlocutory appeal of the denial of relief sought under section 74.351(b), section 74.351 applies only to 'health care liability claims.' Therefore, we must first determine if appellant's claim constitutes a health care liability claim."); *see also Oak Park, Inc. v. Harrison,* No. 11–05–00298–CV, 2006 Tex. App. LEXIS 8096, *7 (Tex.App.-Eastland July 27, 2004, no pet.) (not designated for publication). Therefore, Stradley's motion to dismiss for lack of jurisdiction is denied.

## B. Standard of Review

■ Generally, we review a trial court's order on a motion to dismiss under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). However, whether a claim is a health care liability claim pursuant to section 74.351 is a question of law and is reviewed *de novo. Buck v. Blum,* 130 S.W.3d 285, 290 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Ponce v. El Paso Healthcare Sys., Ltd.,* 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet. denied); *Gomez v. Matey,* 55 S.W.3d 732, 735 & n. 2 (Tex.App.-Corpus Christi 2001, no pet.). The dismissal order states that "the underlying nature of this case is not a 'health care liability claim' [sic] as defined in Section 74.001 et. seq. Texas Civil Practice and Remedies Code and therefore, Defendant's Motion to Dismiss should be denied." We shall review the statutory interpretation question presented by VBMC's motion to dismiss *de novo.*

## C. The Categorization of Safety Claims

The first two issues are so interrelated and dispositive to this appeal that they will be dealt with together. Through its second issue, VBMC contends that the trial court erred in denying its motion to dismiss because all claims based on safety practices ("safety claims") against a health care provider should be categorized as health care liability claims under chapter 74's definition of a health care liability claim. VBMC contends every safety claim against a health care provider or physician would be a health care liability claim if the safety claim asserts departures from "accepted standards of safety." In essence, VBMC urges us to read the definition of a health care liability claims as *"a cause of action against a health care provider* or physician *for* treatment, lack of treatment, or other claimed *departure from accepted standards of* medical care, or health care, or *safety* or professional or administrative services directly related to health care . . . ." Tex. Civ. Prac. & Rem.Code Ann. § 74.001(13)(Vernon 2005) (emphasis added). It primarily relies upon the holding in *Diversicare* to support its reading of chapter 74. *See Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 855 (Tex. 2005).

### 1. Safety Claims Under the MLIIA: The Diversicare Case

The Texas Supreme Court recently dealt with how safety violation allegations could be categorized as health care liability claims under the Medical Liability and Insurance Improvement Act ("MLIIA"), chapter 74's precursor. *Id.* at 842. In *Diversicare,* Maria Rubio, through her daughter as next friend, sued her nursing home for injuries that occurred from two alleged falls and for alleged sexual assault against her by another nursing home patient. *Id.* at 845. The sexual assaults allegedly took place nearly five and a half years before suit was filed. *Id.* Diversicare moved for summary judgment on all of Rubio's claims arising from the alleged sexual assaults, arguing that the MLIIA's two-year statute of limitations barred recovery on the claims. *Id.* Rubio argued that because her claims were not health

care liability claims under the MLIIA, they were governed by the general statute of limitations for personal injury claims, which tolls the statute of limitations for mental incapacity. Tex. Civ. Prac. & Rem. Code Ann. §§ 16.001(b), 16.003 (Vernon).

A majority of the Supreme Court held that Rubio's causes of action were health care liability claims because the legislature meant to include all safety claims against health care providers or physicians within the scope of the MLIIA. *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 853. The relevant statute at the time read:

> a cause of action against a health care provider or physician *for* treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or *safety* which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

*Former* Tex.Rev.Civ. Stat. art. 4590i, § 1.03(a)(4) (emphasis added).[3] The Supreme Court noted that, "[t]he Legislature's inclusion within the scope of the [MLIIA] of claims based on breaches of accepted standards of 'safety' expands the scope of the statute beyond what it would be if it only covered medical and health care." *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 855. The majority reasoned that a nursing home's provision of professional supervision, monitoring, and protection of the patient population necessarily implicated the standards of safety under the MLIIA. *Id.* at 850–51. However, the majority's opinion conceded that, "[t]here may be circumstances that give rise to premise liability claims in a healthcare setting that may not be properly classified as health care liability claims...." *Id.* at 854.

### 2. Safety Claims Under Chapter 74

The instant case is governed by chapter 74 of the Civil Practice and Remedies Code, which contains different language than that used in the *Diversicare* case. A health care liability claim under the current statute is defined as:

> [A] cause of action against a health care provider or physician *for* treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or *safety* or professional or administrative services *directly related to health care*, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem.Code Ann. § 74.001(13) (Vernon 2005) (emphasis added). According to the Code Construction Act, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005).

The instant case is legally distinguishable from *Diversicare* because the statute in question has been revised. The MLIIA broadly defined health care liability claims because it not only included claims for treatment or lack of treatment, but it also included claims for "other claimed departure from accepted standards of medical care or health care or safety ...." *former* Tex.Rev.Civ. Stat. art. 4590i, § 1.03(a)(4). For, "the Legislature's inclusion within the scope of the MLIIA of claims based on breaches of accepted standards of 'safety' expands the scope of the statute beyond what it would be if it only covered medical and health care." *Diversicare Gen. Part-*

---

**3.** The legislature repealed the MLIIA, amended parts of the previous article 4590i, and recodified it in 2003 as chapter 74 of the Texas Civil Practice and Remedies Code. Act of June 2, 2003, 78th Leg., R.S., ch. 204, 2003 Tex. Gen. Laws 847.

*ner, Inc.*, 185 S.W.3d at 854. We note that there was no comma separating the phrases medical care, health care, or safety and that a cause of action under the MLIIA must be one "which proximately results in injury to or death of the patient." *Id.*

The current statute covers three types of claims: treatment, care, and peripheral claims. Tex. Civ. Prac. & Rem.Code Ann. § 74.001(13). Claims involving treatment, lack of treatment, medical care, or health care against a health care provider or physician that proximately cause injury or death to a claimant are automatically categorized as health care liability claims. *Id.* Claims involving "safety or professional or administrative services" constitute the final type of possible health care liability claims contemplated by the statute. *Id.* These peripheral claims are not separated by commas, they are only separated by the disjunctive term "or," and therefore fall into the same class of claims. The phrase appearing right after the peripheral claims is "directly related to health care." Both the peripheral claims and the latter phrase are confined with each other by commas. Because we are mindful of the rules of grammar when reading a statute, we find the peripheral claims are tempered by the phrase "directly related to health care" because it appears immediately after that class of claims.

■ Based upon a grammatically correct reading of the statute, we hold that a safety claim can be categorized as a health care liability claim only when it is against a health care provider or physician for a claimed departure from accepted standards of safety directly related to health care. *But see Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 861 n. 4 (Jefferson, C.J., concurring in part, dissenting in part, and concurring in judgment) (in dicta the Chief Justice noted that, "[i]t is clear under the revised statute that claims for

'professional or administrative services' must be 'directly related to health care'; however, there is no indication that claims involving 'safety' must also relate to health care."). Holding otherwise and finding all safety claims against health care providers or physicians to be health care liability claims regardless of whether they directly relate to health care, would be an arbitrary and legislatively unauthorized expansion of the health care liability statute.

### 3. *Stradley's Claims*

■ Our final step in resolving VBMC's first two issues is to determine whether the underlying nature of Stradley's claims are safety claims that directly relate to health care. Artful pleading cannot avoid the requirements of section 74.351 when the essence of the suit is a health care liability claim. *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 849 ("It is well settled that a health care liability claim cannot be recast as another cause of action to avoid the requirements of the MLIIA"); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex.2004); *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40 (Tex.1998). To determine whether a cause of action falls under chapter 74's definition of a health care liability claim, we examine the claim's underlying nature. *Id.* (citing *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex.1994)). One consideration in that determination may be whether proving the claim would require the specialized knowledge of a medical expert. *Garland Cmty. Hosp.*, 156 S.W.3d at 544 (citing *Rogers v. Crossroads Nursing Serv., Inc.*, 13 S.W.3d 417, 419 (Tex.App.-Corpus Christi 1999, no pet.)).

Stradley's premises liability claim and negligence causes of action stem from an accident she had while using a treadmill. They are personal injury claims of the most pedestrian nature. A jury could un-

derstand the evidentiary issues and negligence standards posed by Stradley's claims without the aid of a medical expert's report. *See Rogers*, 13 S.W.3d at 419. Much has been made about Stradley's physician recommending an exercise routine and how such a recommendation might recast Stradley's claims into health care liability claims. The analogy is absurd. While exercise has a salutary effect on one's health, in most situations a doctor's recommendation of regular exercise is no more related to the rendition of health care than the automobile ride one makes for a doctor's appointment. *See, e.g., Shults v. Baptist St. Anthony's Hosp. Corp.*, 166 S.W.3d 502, 505 (Tex.App.-Amarillo 2005, pet. denied) (holding that the presence of a sharp paint chip in the shower of the plaintiff's hospital room could not be considered in any way an inseparable part of the medical services rendered to the plaintiff.).

Based upon the underlying nature of Stradley's claims, we hold that they do not constitute health care liability claims under the statute. We overrule VBMC's first and second issues.

## III. CONCLUSION

We affirm the trial court's order denying VBMC's motion to dismiss and remand the cause to the trial court for further proceedings. Because of our disposition of the VBMC's first and second issues, we need not address VBMC's third or fourth issues. *See* Tex.R.App. P. 47.1.